861 So.2d 156 (2003)
C.T. TRAINA, INC.
v.
SUNSHINE PLAZA, INC.
No. 2003-C-1003.
Supreme Court of Louisiana.
December 3, 2003.
*157 Ernest A. Burguieres, III, for Applicant.
David J. Maraldo, Metairie, for Respondent.
PER CURIAM.
We granted certiorari in this case to consider whether the court of appeal erred in reversing the trial court's finding that the defendant property owner is liable to a plumbing subcontractor. For the reasons assigned, we conclude the defendant judicially confessed that it entered into an oral contract with the plaintiff, and therefore reverse the judgment of the court of appeal.

FACTS AND PROCEDURAL HISTORY
In June 1996, Sunshine Plaza, Inc. ("Sunshine") hired Commercial Asset Management Company, Inc. ("CAMCO") as general contractor to build a shopping center on property owned by Sunshine in Mandeville, Louisiana. Pursuant to the Contractor Agreement between Sunshine and CAMCO dated June 19, 1996, CAMCO "shall sub-contract for construction services, advise owner [Sunshine], supervise construction and pay directly for services" on the $1.5 million shopping center project. In July 1996, CAMCO hired Pontchartrain Plumbing, Inc. ("Pontchartrain") to install the plumbing in the shopping center. Pontchartrain began the work, but it was released from the project before the plumbing was fully completed.
In November 1996, C.T. Traina, Inc. ("Traina") was hired to replace Pontchartrain as the plumbing subcontractor. It is undisputed that Traina did not enter into a written contract with either CAMCO or Sunshine for its work; rather, Traina asserts that it agreed to complete the work begun by Pontchartrain on a customary "time and materials" basis. In February and March 1997, Sunshine paid Traina a total of $20,000 on its account.[1] On May 14, 1997, Traina submitted to Sunshine a final invoice of $23,500 for labor and materials.[2] However, Sunshine refused to pay the invoice. In September 1997, Traina filed suit against Sunshine to collect $23,500, plus legal interest, costs, and attorney's fees.[3]
*158 On November 10, 1997, Sunshine answered Traina's petition and filed a peremptory exception of no cause of action, in which Sunshine alleged the following:
The Petition seeks recovery of amounts allegedly owed plaintiff for labor and materials furnished to defendant in connection with the installation of plumbing, allegedly on an open account basis, together with reasonable attorney's fees incurred in the collection thereof. Notwithstanding the allegations of the Petition, the labor and materials were furnished, not on an open account basis, but pursuant to an oral contract by and between plaintiff and defendant, and, consequently, plaintiff has no cause of action for attorney's fees incurred in the collection of the amounts allegedly owed, if any, for same. [emphasis added]
In March 1998, Sunshine amended its answer to the petition and filed a peremptory exception of no right of action. In these pleadings, Sunshine argued that it had no contractual relationship with Traina. More particularly, Sunshine contended that Traina was a subcontractor of CAMCO and therefore Traina had no right to proceed against Sunshine for amounts owed on the shopping center project. However, Sunshine continued to assert in the alternative that an oral contract existed:
In the event the Court should determine that a contract existed by and between plaintiff and defendant and overrule the above and foregoing exception of no right of action, and in the alternative thereto, defendant avers that the labor and materials furnished by plaintiff to defendant were furnished, not on an open account basis, but pursuant to an oral contract by and between plaintiff and defendant, and, consequently, plaintiff is not entitled to attorney's fees incurred in the collection of the amounts allegedly owed, if any, for the same.
The trial court denied Sunshine's exceptions, and the case proceeded to a trial on the merits. At trial, Traina presented the testimony of Samuel Markovich, the owner of Sunshine; Charles Majors, a licensed master plumber formerly employed by Traina; and Gary Traina, the vice-president of Traina. Mr. Markovich testified that Sunshine had no direct contractual relationship with Traina. According to Mr. Markovich, he had no say in hiring Traina after Pontchartrain was removed from the shopping center project, pointing out that it was CAMCO's obligation to hire the subcontractors on the project. Nevertheless, Mr. Markovich admitted that he went to the construction site once a week and that he knew Traina's employees were working there. Mr. Markovich also acknowledged that he paid most of the subcontractors and suppliers directly (including Traina) by checks drawn on Sunshine's account, to assure "no money would be lost in between me and the subcontractors." Mr. Traina testified about the relationship his company had with Sunshine. Mr. Traina admitted that he was initially approached by Robert Hughes of CAMCO about bidding on the Sunshine project. He also acknowledged that Mr. Markovich had not contacted him directly prior to Traina's beginning work on the shopping center project. However, Mr. Traina testified that he always thought he was working *159 for Mr. Markovich because "he was the one paying the bills."
At the conclusion of Traina's case, the trial court observed that Mr. Markovich essentially functioned as his own general contractor and that CAMCO acted as general contractor "in name only." While agreeing that no open account relationship existed between Sunshine and Traina, the trial court ultimately concluded that Sunshine was liable to Traina. Accordingly, the trial court rendered judgment in favor of Traina in the amount of $43,500, less a credit for the $20,000 Sunshine had already paid, plus legal interest and costs.
Sunshine appealed the trial court's judgment.[4] In an opinion not designated for publication, the court of appeal reversed the trial court's judgment, finding the trial court was manifestly erroneous in determining an oral contract existed between Traina and Sunshine.
Upon Traina's application, we granted certiorari to review the correctness of that ruling. C.T. Traina, Inc. v. Sunshine Plaza, Inc., 03-1003 (La.6/20/03), 847 So.2d 1246.

DISCUSSION
In their briefs and arguments before this court, the parties spent much time discussing whether Traina proved the existence of an oral contract between it and Sunshine. However, we need not reach this thorny question if we determine Sunshine made a judicial confession that an oral contract between the parties existed. Accordingly, we now turn to a discussion of the requirements for a judicial confession.
The definition of judicial confession is contained in Article 1853 of the Civil Code, which provides:
A judicial confession is a declaration made by a party in a judicial proceeding. That confession constitutes full proof against the party who made it. A judicial confession is indivisible and it may be revoked only on the ground of error of fact.
The well settled jurisprudence establishes that an admission by a party in a pleading constitutes a judicial confession and is full proof against the party making it. Taboni ex rel. Taboni v. Estate of Longo, 01-2107 (La.2/22/02), 810 So.2d 1142; Starns v. Emmons, 538 So.2d 275 (La.1989); Smith v. Board of Trustees, 398 So.2d 1045 (La.1981); Cheatham v. City of New Orleans, 378 So.2d 369 (La.1979). A judicial confession has the effect of waiving evidence as to the subject of the admission. Crawford v. Deshotels, 359 So.2d 118 (La. 1978); Jackson v. Gulf Ins. Co., 250 La. 819, 199 So.2d 886 (1967); Farley v. Frost-Johnson Lumber Co., 133 La. 497, 63 So. 122 (1913). A declaration made by a party's attorney or mandatary has the same effect as one made by the party himself. La. Civ.Code art. 1853, cmt. (b).
In the instant case, the exception of no cause of action filed by Sunshine's attorney on its behalf clearly stated that "the labor and materials were furnished, not on an open account basis, but pursuant to an oral contract by and between plaintiff and defendant ...." [emphasis added] Approximately four months later, Sunshine filed a peremptory exception of no right of action and amended answer in which it denied the existence of a contractual relationship, but continued to allege, in the *160 alternative, that if the court denied its exception, the court should find an oral contract existed.[5] We conclude these allegations amount to a judicial confession of the existence of an oral contract between Sunshine and Traina.
The court of appeal recognized that Sunshine judicially confessed that it had an oral contract with Traina, but reasoned that Sunshine revoked its admission when it filed a subsequent pleading denying any contractual relationship existed. We disagree. La. Civ.Code art. 1853 explicitly provides that a judicial confession may be revoked only on the ground of error of fact. At no time did Sunshine assert its judicial confession of an oral contract was made in error. To the contrary, Sunshine's amended answer confirmed Sunshine's earlier allegation of an oral contract by continuing to allege, in the alternative, that an oral contract existed. Therefore, we must conclude based on the record before us that Sunshine's judicial confession of an oral contract was never revoked on the ground of error of fact.
Because a judicial confession has the effect of waiving evidence relating to the subject of the admission and withdrawing the subject matter of the confession from issue, Traina was not required to offer at trial affirmative proof of its oral contract with Sunshine. Therefore, the only issue before the trial court was whether Traina was entitled to recover under the oral contract. The trial court found Traina performed work that benefitted Sunshine, the amount Traina charged was reasonable, and that Sunshine should pay the balance due. These findings are not manifestly erroneous based on the record before us. Accordingly, we must reinstate the trial court's judgment in favor of Traina.

DECREE
For the reasons assigned, the judgment of the court of appeal is reversed, and the judgment of the trial court in favor of C.T. Traina, Inc. is hereby reinstated. All costs in this court are assessed against Sunshine Plaza, Inc.
WEIMER, J., concurs & assigns reasons.
WEIMER, J., concurring.
I concur in the result, but would not resolve this matter on the basis of a judicial confession because other pleadings contradicted the admission of the existence of an oral contract upon which the majority relies.
In November 1997, Sunshine Plaza, Inc. (Sunshine) answered the petition of C.T. Traina, Inc. (Traina) and made the judicial confession or "admission" of an oral contract between Sunshine and Traina. However, less than six months later, Sunshine amended its answer and filed an exception of no right of action grounded on the lack of any contract between Sunshine and Traina. In the alternative, Sunshine pled the material and labor were not furnished on open account. Trial on the merits was not held until August 27, 2001. There was no showing at trial that Sunshine's adversary relied on the original answer in which Sunshine alleged there was an oral contract. Thus, Sunshine's amended answer pleading alternative theories of no oral contract or if an oral contract, no open account, were not relied upon by Traina.
*161 A litigant is not barred from contradicting a judicial confession in the absence of a showing that his adversary was misled or deceived by reason of his averment. J.H. Jenkins Contractors, Inc. v. Farriel, 261 La. 374, 395, 259 So.2d 882, 890 (1972). Appellate courts have long followed the rule, which the majority in the instant case ignores, that judicial admissions in the same suit do not bar curative amendments. Guidry v. Barras, 368 So.2d 1129, 1132 (La.App. 3 Cir.1979), cited in Scoggins v. Frederick, 98-1814, p. 6 (La.App. 1 Cir. 9/24/99), 744 So.2d 676, 682, writ denied, 99-3557 (La.3/17/00), 756 So.2d 1141; and Hibernia National Bank v. Carner, 997 F.2d 94, 101 (5th Cir.1993).
Although Sunshine's owner, Samuel Markovich, testified that Sunshine had no direct contractual relationship with plaintiff, Markovich admitted he went to the site once a week. He knew Traina's employees were working there. Markovich also acknowledged that he directly paid most of the sub-contractors and suppliers, including Traina, by checks drawn on Sunshine's account. Gary Traina of C.T. Traina, Inc. testified that he always thought he was working for Markovich of Sunshine because "he was the one paying the bills."
While agreeing that no open account relationship existed between Sunshine and Traina, the trial court ultimately concluded that Sunshine is liable to Traina, apparently premising its finding upon the existence of an oral contract between Traina and Sunshine. At the conclusion of Traina's case, the trial court observed that Markovich essentially functioned as his own general contractor and that CAMCO acted as general contractor "in name only."
Based on the factual findings of the trial court coupled with the pleadings by Sunshine which include admission that "the labor and materials were furnished, not on an open account basis, but pursuant to an oral contract by and between plaintiff and defendant,"[1] I would find the trial court was not manifestly erroneous in determining an oral contract was confected.
NOTES
[1] Sunshine made three separate payments to Traina. The checks were drawn on the account of Sunshine Plaza, Inc. and payable to C.T. Traina, Inc., dated February 28, 1997 (in the amount of $10,000); March 7, 1997 ($5,000); and March 18, 1997 ($5,000). All three checks were signed by Samuel Markovich, the owner of Sunshine. Traina received no payments from CAMCO with respect to the shopping center project.
[2] Traina billed Sunshine a total of $43,500 for labor and materials, less the $20,000 previously paid by Sunshine.
[3] In July 1998, Traina filed a supplemental and amending petition adding CAMCO as a defendant. CAMCO answered the amended petition in January 1999 and denied that it had any contractual relationship with Traina. Rather, CAMCO asserted that Traina's work "was performed pursuant to petitioner's contractual relationship with and for the exclusive benefit of" Sunshine. At some point after the answer was filed, CAMCO declared bankruptcy.
[4] Traina did not appeal the trial court's determination that no open account relationship existed between Traina and Sunshine. Accordingly, the open account issue is not before us.
[5] Presumably, Sunshine sought to have the court find Traina's services were rendered pursuant to an oral contract, rather than on an open account basis, because attorney's fees are available under the open account statute. However, Sunshine's motivation for making the admission is of no moment.
[1] A party's judicial "admission is to be given the probative value it deserves as an admission of the party who made it." Alexis v. Metropolitan Life Insurance Company, 604 So.2d 581, (La.9/4/92).