989 So.2d 235 (2008)
J & R ENTERPRISES-SHREVEPORT, L.L.C., Plaintiff-Appellee
v.
Richard D. SARR, Jr., Defendant-Appellant.
No. 43,364-CA.
Court of Appeal of Louisiana, Second Circuit.
August 13, 2008.
Rehearing Denied September 11, 2008.
Shuey Smith LLC, by Richard E. Hiller, Shreveport, for Appellant.
*236 Ayres, Warren, Shelton & Williams, L.L.C., by Curtis R. Shelton, Shreveport, for Appellee.
Before STEWART, CARAWAY and PEATROSS, JJ.
CARAWAY, J.
After the purchase of a cabin and a lease of the lot on which the cabin was located, the defendant was sued for eviction from the cabin and lot by his vendor/lessor's successor in title to the property. The trial court's judgment ordered defendant's eviction from the lot while recognizing his ownership of the cabin, and defendant appeals. Finding that the summary proceeding for eviction was inappropriately utilized for the resolution of this dispute, we reverse.

Facts
This eviction dispute involves the occupancy of a small cabin site on Lake Bistineau purportedly leased by Richard D. Saar, Jr.[1] ("Saar") from Camp Joy Marina, Inc. ("CJM, Inc.") in April 2005. The cabin site (hereinafter "Lot 4624") is shown and identified on a 1997 survey plat of the marina properties as number 4624, which coincides with the parish road address number for the cabin. Also, in a separate transaction, Saar purchased the cabin on the leased land from CJM, Inc. on April 17, 2005, for $16,000 cash. The "Bill of Sale" for the cabin, which was recorded in the Bossier Parish Conveyance Records on April 22, 2005, described the following:
Cabin/house located at 4624 Camp Joy Rd., Haughton, LA 71037
Saar's lease agreement with CJM, Inc., effective April 1, 2005, described roughly the same property, as follows:
4624 Camp Joy Rd., Camp Joy Marina, Inc., a subdivision in Webster/Bossier Parish, Louisiana,
Saar paid the first annual rental payment of $1,050.00 to CJM, Inc. on April 13, 2005.
About two months later, the property comprising "Camp Joy Marina," including the disputed cabin site, was sold by credit sale deed to J & R Enterprises-Shreveport, LLC ("J & R"). The property in the deed included various parcels of land comprising the marina and surrounding acreage on the lake and was appropriately described using metes and bounds descriptions. Completing the property description, the credit sale deed further provided:
together with all buildings and improvements thereon and all rights thereto belonging, subject to ownership of buildings by third parties, and subject to all prior recorded leases, servitudes, easements, restrictions, rights, ways and privileges
and
together with all of Seller's right, title and interest in and to all property located between the above described property and Lake Bistineau and all buildings and improvements thereon or located in Lake Bistineau and adjacent thereto.
LESS AND EXCEPT CAMPHOUSES AND/OR MOBILE HOMES OWNED BY THIRD PARTIES.
An additional provision of the credit sale deed further stated:
II. LEASE AGREEMENTS
This sale includes an assignment by Seller to Purchaser of all Seller's rights and obligations as Lessor under written lease agreements covering and affecting *237 any portion of the above described property.
The credit sale deed from CJM, Inc. to J & R was signed on June 8, 2005, and recorded in Bossier Parish on June 14, 2005. At that time, only Saar's Bill of Sale transaction was recorded, as Saar's lease remained outside the public records.
Kanta Dhaliwal, J & R's sole member, testified at the eviction hearing concerning a written "Memorized (sic) Transaction List" which she received on behalf of J & R in connection with its purchase of the marina. The document, Exhibit J-13, contains an accounts receivable list of 65 tenants who leased barge stalls, trailers, houseboats and cabins at Camp Joy and paid rent periodically. The group of cabins along the southerly portion of the marina in which Lot 4624 is located are identified in part by municipal numbers, similar to the survey and bill of sale for Saar's cabin. The lease list entry for "4624" appeared under the following name:

 Name Brooks, Gary 4624 Type Stmt Charge
 Automatically Enter
 Account 1200-Accounts Receivable Amount 1,025.00
 Frequency Annually Next Date 03/25/2006

On direct examination, Dhaliwal was questioned concerning the information received from one of the owners of CJM, Inc. concerning J & R's purchase:
Q Now, Ms. Dhaliwal, from whom did you receive this document, J-13, Memorized Transactions list?
A This was given to me by my closing attorney, Jared Evans. These papers were given to me by Kim Collier at the time of closing. It was the list of everyone who was a renter or the property owner or the boat stall, you know, anyone who had something to do with Camp Joy.
Q Okay. And  and Kim Collier, she was with the seller?
A She was the seller.
Q She was a seller, along with Camp Joy Marina, Inc.?
A Yes. Yes.
Q Now, is a lease with Mr. Sarr (sic) listed anywhere on Exhibit J-13?
A No, sir, it's not.
The following year, in September 2006, J & R billed Saar for $520.00 based upon Dhaliwal's mistaken belief that a lease requiring monthly rentals applied to Saar's cabin. The $520 represented $390.00 past due for the months of July, August and September 2006, and $130.00 for October 2006. The following handwritten notation appeared on the statement:
Richard,
I need a payment receipt for June 2005 to June 2006 or you owe me $130.00 per month from 2005 June to September 1st 2006 so we can make the payment schedule like everyone else.
You have five days to make your account current failing which I will go to Justice of Peace and terminate utilities water & sewer.
 By J & R ...
At the same time, Saar's personal check for $1,055.00 dated August 30, 2006, for "annual lease fee 4624" was returned.
In March 2007, formal notice for eviction was delivered to Saar, as follows:
In accordance with Louisiana Code of Civil Procedure articles 4701 and 4702, you are hereby give (sic) notice to vacate the above referenced property within five days from the delivery of this notice. The reason that this notice is being given is:

*238 A. As to 4624 Camp Joy Road, Haughton, Bossier Parish, Louisiana  You have failed to pay the rent and other charges owed for the months of June, 2005, and thereafter; and
B. As to 4636 Camp Joy Road, Haughton, Bossier Parish, Louisiana  You have no lease or other legal right to occupy the property.[2]
Finally, on April 3, 2007, another personal check for $2,205 "in payment of [Saar's] obligations for 2006 and 2007 under a lease agreement for 4624 Camp Joy Road," was mailed to J & R by Saar's attorney. The next day, J & R brought this eviction action against Saar alleging that Saar was delinquent in the payment of rents for a lease on the 4624 Camp Joy Road property. Specifically, the petition alleged Saar's failure "to pay the rental due under the lease agreement for the months of June, 2005, and each month thereafter. Therefore, petitioner has elected to terminate the lease." In addition to seeking Saar's eviction from 4624 Camp Joy Road, J & R prayed for monetary damages for the unpaid rents; however, that claim which requires suit via ordinary proceedings was severed from the eviction action. The petition made no exception regarding Saar's eviction from the cabin purchased separately for $16,000.
After reviewing numerous documents concerning the lease, bill of sale and credit sale transactions, and the testimony of Saar and Dhaliwal, the trial court ruled that Saar should be evicted from Lot 4624. Nevertheless, the trial court recognized Saar's ownership of the cabin/structure on the lot and allowed him 45 days to remove the structure. The court specifically found that the provision of the deed assigning J & R the seller's lease rights and obligations was inapplicable to CJM, Inc.'s April 2005 lease to Saar since the lease was unrecorded and not otherwise brought to the purchaser's attention prior to the sale. Recognizing Saar's ownership of the cabin, the trial court found that the deed placed J & R on notice of that separate ownership under the provision that the sale was "less and except camp houses ... owned by third parties." From this judgment, Saar appeals.

Discussion
There are unique aspects of the pleadings, proceedings and the facts of this case which exclude this dispute for decision in an eviction action with its summary proceedings and require our reversal of the judgment.
First, in the summary proceeding for eviction, La. C.C.P. art. 4731(A) requires that "[t]he rule to show cause shall state the grounds upon which eviction is sought." This is an important due process concern because of the rapidity of this summary proceeding that can oust a party from occupancy rights in property. J & R alleged in its petition for eviction that the justification for this action was the termination of Saar's lease on Lot 4624 due to unpaid rent. This was an eviction claim under La. C.C.P. art. 4701.[3] The lease *239 was alleged to have been delinquent in June 2005, which meant that the lease would have predated the time of J & R's purchase of the Camp Joy property and therefore was a lease contract between Saar and CJM, Inc., J & R's predecessor in title. Saar, who was not required to answer the summary eviction proceeding, defended at trial based on such lease with the former owner and Saar's proper payments of rent. The April 2005 written lease was introduced into evidence. Nevertheless, despite its pleadings, J & R abruptly altered the whole nature of the eviction action at trial. Since the lease was not recorded in the public records until after recordation of J & R's credit sale deed, J & R changed its position at trial regarding Saar's breach of the lease, asserting that it neither assumed the obligations of the lease nor acquired ownership of the Camp Joy properties subject to the lease. This therefore became, in the course of the trial of the summary rule, an eviction action under La. C.C.P. art. 4702,[4] with J & R claiming that Saar was a mere occupants[5] of Lot 4624 without any lease contract governing the parties' relationship.
Second, while the trial court ruled in favor of eviction, affording J & R protection against the unrecorded lease under the public records doctrine, the trial court's judgment did not give public records protection to J & R's presumptive ownership of the "cabin/house" located on Lot 4624 which ordinarily is a component part of a tract of land. Buildings permanently attached to the ground are component parts of a tract of land unless they are owned by someone other than the landowner, La. C.C. art. 463, and that separate ownership of a building by someone other than the landowner must be evidenced in the conveyance records of the parish. La. C.C. art. 491. Under the ruling, J & R was a third party protected from the effect of Saar's unrecorded lease of Lot 4624, but not so regarding Saar's claim to the cabin on that same immovable property.
This recognition of Saar's ownership of the cabin effectively resulted in the denial of J & R's eviction claim regarding the cabin. With a reconventional demand for recognition of Saar's ownership of the cabin being procedurally improper in the summary proceeding for eviction, the trial court's judgment nevertheless went beyond the scope of an eviction action and adjudicated Saar's ownership (and attendant right of occupancy of the cabin) while additionally granting J & R the unsought relief for removal of the cabin from Lot 4624.[6] Other relief, outside recovery of *240 the occupancy of property, must be obtained by ordinary proceedings and not in the eviction action. Lifemark Hospitals of Louisiana, Inc. v. Gulf South Medical and Surgical Institute, Inc., 03-1122 (La.App. 5th Cir.1/27/04), 865 So.2d 903.
In sum, this summary eviction proceeding morphed from an action on a delinquent lease into an action involving questions of the ownership of two separate immovables. The portion of the judgment recognizing Saar's ownership claim to the cabin as a separate immovable is not the remedy for eviction of a tenant or a mere occupant envisioned by the summary eviction procedure of our law.
In an eviction proceeding, when the plaintiff alleges himself as lessor, he must establish that the defendant/lessee's right of occupancy has ceased. La. C.C.P. art. 4701. The issue of the plaintiff's ownership of property is not present under La. C.C.P. art. 4701 because the parties are in a contractual relationship under the lease. In contrast, in an eviction proceeding against an occupant under La. C.C.P. art. 4702, plaintiffs are required to make a prima facie showing of title to the property, prove that the defendant is an occupant within the meaning of La. C.C.P. art. 4704, and show that the purpose of the occupancy has ceased. R & R Land Company v. Lawson, 427 So.2d 1356 (La.App. 2d Cir. 1983).
In this case, J & R was allowed to withdraw a clear judicial confession under Civil Code Article 1853 of the parties' lease relationship. Stated succinctly, J & R judicially admitted in its petition Saar's ownership of lease rights affecting J & R's ownership of an immovable. An admission by a party in a pleading constitutes a judicial confession and is full proof against the party making it. C.T. Traina, Inc. v. Sunshine Plaza, Inc., 03-1003 (La.12/3/03), 861 So.2d 156, 159. A judicial confession has the effect of waiving evidence as to the subject of the admission. Id. Even though Article 1853 allows a judicial confession to be withdrawn or revoked on the ground of an error of fact, the evidence indicates that Dhaliwal acknowledged long before the institution of this suit her belief that J & R acquired ownership of Lot 4624 subject to a lease.
From the pleadings, Saar expected to defend his occupancy at trial under an acknowledged lease and is now met with J & R's argument in its appellate brief that Saar failed to call as a witness the owner of CJM, Inc. in order to establish that J & R had assumed the lease obligations in its purchase of the marina. The burden of proof for that matter would appear to have been on J & R which had the duty to attempt to withdraw its prior judicial confession of the binding effect of the lease upon its acquisition of the Camp Joy properties. While we agree that testimony of the principals of the former owner of the marina properties is a glaring omission of importance for the resolution of this dispute, the abrupt change in the nature of this eviction action mid-trial by the attempted revocation of the plaintiff's judicial *241 confession should not operate to Saar's prejudice.
Moreover, we find that Saar successfully challenged J & R's prima facie showing that its title or ownership to Lot 4624 was free and clear of the obligations of the predial lease. As an exception to our public records law and the doctrine's protection of third persons who rely on same, a person who by contract assumes an obligation or is bound by contract to recognize it is not a third person with respect to the obligation or right or to the instrument creating or establishing it. La. C.C. art. 3343; Bradley v. Sharp, 35,034 (La.App. 2d Cir.8/22/01), 793 So.2d 500, writ denied, 01-2618 (La.12/14/01), 804 So.2d 633; Stanley v. Orkin Exterminating Co., Inc., 360 So.2d 225 (La.App. 1st Cir.1978). The evidence raised by Saar which challenged that J & R's acquisition of ownership was unaffected by the predial lease was:
(1) The provision of the credit sale deed acknowledging J & R's assumption of certain unspecified and unrecorded leases;
(2) The "Memorized (sic) Transaction List" which listed a lease of Lot 4624 as one of the 65 lease agreements assumed by J & R;
(3) The provision of the credit sale deed acknowledging that J & R's acquisition did not include certain camphouses owned by unidentified third parties, whose ownership of such separate immovables is not identified by recorded acts;
(4) The Bill of Sale for Saar's cabin identifying its location on Lot 4624, recorded prior to J & R's acquisition of the property; and
(5) J & R's delay in seeking eviction and its demands for rent.
While the above evidence may not expressly demonstrate that J & R and CJM, Inc. mutually intended for the Saar lease to be assumed in the sale of the marina, it sufficiently rebutted the prima facie showing of plaintiff's clear ownership of the propertycabin and lotnecessary for relief in this summary rule proceeding. The immediate remedy of eviction under these circumstances was improper.

Conclusion
Our reversal of the trial court's judgment rests primarily on the procedural problems of this case making it inappropriate for summary eviction. The change in the proceeding from tenant eviction to occupant eviction, the judicial admission, and the defendant's ownership of the separate immovable require reversal.
The judgment of the trial court is reversed. Costs of the appeal are assessed to appellee.
REVERSED.
APPLICATION FOR REHEARING
Before WILLIAMS, STEWART, CARAWAY, PEATROSS and DREW, JJ.
Rehearing denied.
NOTES
[1] Richard D. Saar, Jr. is the defendant in this proceeding. Defendant's name was incorrectly spelled "Sarr" in the original petition.
[2] The additional marina property at 4636 Camp Joy Road is no longer involved in this dispute.
[3] La. C.C.P. art. 4701 provides, in pertinent part:

When a lessee's right of occupancy has ceased because of the termination of the lease by expiration of its term, action by the lessor, nonpayment of rent, or for any other reason, and the lessor wishes to obtain possession of the premises, the lessor or his agent shall cause written notice to vacate the premises to be delivered to the lessee. The notice shall allow the lessee not less than five days from the date of its delivery to vacate the leased premises.
[4] La. C.C.P. art. 4702 provides:

When an owner of immovable property wishes to evict the occupant therefrom, after the purpose of the occupancy has ceased, the owner, or his agent, shall first cause a written notice to vacate the property to be delivered to the occupant.
This notice shall allow the occupant five days from its delivery to vacate the premises.
[5] La. C.C.P. art. 4704 provides, in pertinent part:

"Occupant" includes a sharecropper; half hand; day laborer; former owner; and any person occupying immovable property by permission or accommodation of the owner, former owner, or another occupant, except a mineral lessee, owner of a mineral servitude, or a lessee of the owner.
[6] La. C.C. art. 493 provides, in pertinent part:

When the owner of buildings, other constructions permanently attached to the ground, or plantings no longer has the right to keep them on the land of another, he may remove them subject to his obligation to restore the property to its former condition. If he does not remove them within ninety days after written demand, the owner of the land may, after the ninetieth day from the date of mailing the written demand, appropriate ownership of the improvements by providing an additional written notice by certified mail, and upon receipt of the certified mail by the owner of the improvements, the owner of the land obtains ownership of the improvements and owes nothing to the owner of the improvements. Until such time as the owner of the land appropriates the improvements, the improvements shall remain the property of he who made them and he shall be solely responsible for any harm caused by the improvements.
This process established by Article 493 regulating the rights of owners of separate immovables lends itself to an ordinary action for enforcement instead of the summary process for eviction.