CONERY, J.,
dissenting.
hi respectfully dissent. In my opinion, the majority shifts the burden in a tax dispute case from the Taxpayer to the Collector. In effect, the majority allows the practice of a taxpayer in a cash business using cash register receipts for each transaction for his own purposes, to then disregard the receipts, pay whatever “expenses” he chooses out of the cash receipts, deposit the balance in the bank, and then use BANK RECORDS of his NET DEPOSITS as adequate records for sales tax audit purposes. We cannot condone such a practice, nor does the law allow us to do so.

*700
Assignment of Error One

The Collector correctly asserted in its assignment of error one that “the trial court erred in holding that a cash-based business may comply with the | ^recordkeeping requirement of La.R.S. 47:337.29 by destroying records of actual gross sales and keeping only net bank deposit records.”
Louisiana Revised Statutes 47:337.29 and its implementing regulation, La. Admin.Code Tit. 61, pt. 1 § 4359, provide the basis for the record keeping requirements for establishments such as Yesterdays and Cowboys. La.R.S. 47:337.29 provides in pertinent part (emphasis added):
A. (1) Every dealer required to make a report and pay any tax under this Chapter shall keep and preserve suitable records of the sales, purchases, or leases taxable pursuant to this Chapter, and such other books of accounts as may be necessary to determine the amount of tax due hereunder, and other information as may be required by the collector; and each dealer shall secure, maintain and keep until the taxes to which they relate have prescribed, a complete record of tangible personal property received, used, sold at retail, distributed, or stored, leased or rented, within the taxing jurisdiction by the said dealer, together with invoices, bills of lading, and other pertinent records and papers as may be required by the collector for the reasonable administration of the tax, and a complete record of all sales or purchases of services taxable as provided in this Chapter until the taxes to which they relate have prescribed.
Louisiana Administrative Code, Title 61, Part 1 § 4359 provides in pertinent part (emphasis added):
A. As provided in R.S. 47:309 and R.S. 47:337.29, every person required to collect or remit the tax imposed under R.S. 47:302, 321, 331, and local ordinances shall keep a permanent record of all transactions in sufficient detail to be of value in determining the correct tax liability. The records to be kept shall include all sales invoices, purchase orders, merchandise records, inventory records, credit memoranda, debit memoranda, bills of lading, shipping records, and all other records pertaining to any and all purchases, sales, or use of tangible personal property whether or not the person believes them to be subject to state or local sales or use tax. Full detail must be kept of all property leased or rented from or to others and all services performed for or by others. They must also keep all summaries’ recapitulations, totals, journal entries, ledger accounts, accounts receivable records, accounts payable records, statements, tax returns, and other documents listing, summarizing, or pertaining to such sales, purchases, inventories, shipments, or other transactions dealing with tangible personal property.
|sThe trial court found that evidence presented at trial established the system used by the Clubs for the reporting and remitting of sales taxes as follows:
To account for cash from sales, the managers would meet at the end of the night with the bartenders, each of whom was assigned a cash register. The bartenders would each bring the drawer from their register, along with the register’s “Z-tape.” The manager would count the cash and match the total' against the Z-tape. The cash was then placed into a safe located on the premises of the nightclubs. On the following Monday, the cash was deposited by the managers into each of the [Clubs’] respective bank accounts. Mr. *701 Vallet testified that it was solely the managers’ responsibility to deposit the cash. The [Clubs’] CPA was then given the deposit receipts and monthly bank statements. The CPA would then report the deposits as the [Clubs’] taxable sales, multiply that amount by the applicable tax rate, and remit that result as sales taxes.
(Emphasis added.)
The trial court noted Mr. Vallet’s long history of ownership of both the Clubs, Cowboy’s since 1991 and Yesterdays since 2001. The court also noted that “based upon the advice of his CPA, he has used the abovementioned system for reporting and remitting sales taxes. At no point prior to the audit period in question was this system deemed unacceptable by the Collector.”
The trial court found that La.R.S. 47:337.29(A)(1) contained no definition “as to what qualifies as suitable records under the statute.” Furthermore, “because the Collector provided no guidance prior to the audit period in question as to what specific records were to be maintained,” the trial court found “the terms ‘suitable records’ under La.R.S. 47:337.29(A)(1) to be ambiguous.”
The trial court also found that the Collector was remiss in failing to adopt “a formal set of rules or regulations detailing to the public exactly what constitutes the requisite suitable records.” Further, the trial court found “the Collector failed to produce any evidence that would indicate to entities such [as] these (bars and nightclubs) what constituted the requisite suitable records or that the |4abovementioned system for reporting and remitting sales taxes was insufficient.”
In support of its conclusion there was “simply nothing that would indicate to the [Clubs] that their tax reporting system was improper or incorrect,” the trial court pointed out that the March 2013, “Calca-sieu Tax Review, the month in which this trial began, the Collector posited for the first time that bank statements alone did not constitute suitable records.”
In conclusion, the trial court found:
It is well settled that the tax statutes are to be liberally interpreted in favor of the taxpayer. Uncertainty in statutory language must be resolved against the taxing authority and in favor of the taxpayer. Clyde Juneau Company, Inc. v. Caddo-Shreveport Sales and Use Tax Commission, 28,433 (La.App.2d Cir. 6/26/96), 677 So.2d 610 ... Thus, under these circumstances, the Court finds that [Clubs] maintained suitable records and [were] in compliance with La. R.S. 47:337.29.
The majority apparently agreed with the trial court’s analysis. However, the supreme court in Cleco Evangeline, LLC v. Louisiana Tax Commission, 01-2162, p. 5 (La.4/3/02), 813 So.2d 351, 354, discussed the application of statutory construction and stated:
It is a well-established principle of statutory construction that absent clear evidence of a contrary legislative intention, a statute should be interpreted according to its plain language. See United States v. Apfelbaum, 445 U.S. 115, 121, 100 S.Ct. 948, 952, 63 L.Ed.2d 250 (1980). When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. LSA-C.C. art. 9. This principle applies to tax statutes. Tarver v. E.I. DuPont De Nemours and Company, 93-1005, p. 3 (La.3/24/94), 634 So.2d 356, 358.
It is clear from the trial court’s reasons that it found that bank statements alone, *702 without any additional documentation, were “suitable” under the provisions of La.R.S. 47:337.29 and were acceptable for the calculation of the taxes owed by the Clubs. Although the trial court found the term “suitable” to be “ambiguous,” |Rthe plain words of both the statute and its’ implementing regulation, La. Admin. Code Tit. 61, pt. 1 § 4359, clearly use the mandatory “shall” in requiring specific documentation to be kept by the Clubs, including for “all sales” as well as “all services performed for or by others,” which would include payments to the sheriffs deputies and bouncers hired for security, the bands performing at the Clubs, as well as all the “free give aways” to various groups and organizations. (Emphasis added.)
It should be noted at this juncture that the Clubs had never been audited by the Collector.[1] There is no requirement under the law requiring the Collector to tell the taxpayer exactly what records to maintain. To the contrary, the statute in question places that responsibility directly on the Clubs. As to the excuse that Mr. Vallet relied on his CPA and didn’t know what records to keep, we apply the Latin maxim, ignorantia juris non excusat, (commonly interpreted as “ignorance of the law is no excuse”). Black’s Law Dictionary 712(9th ed.2009). Louisiana has long since codified that maxim into its law. See La. Civ.Code art. 5;[2] Soileau v. La. Paving Co. Inc., 498 So.2d 1166 (La.App. 3 Cir. 1986).
The “z-tapes” from the cash registers at the door of both Clubs correctly calculated the exact amount of cover charges collected and Mr. Vallet, in accordance with the statutes at issue, was clearly required to keep such records, as well as records for services provided by the bands and the security provided by the sheriffs deputies and bouncers. Likewise, Mr. Vallet also had the actual cash | (¡register “z-tapes” which he used to calculate bar sales for his own purposes, yet he inexplicably destroyed those records of actual cash sales as well.
Although the trial court found that the failure of Mr. Vallet to keep these z-tape records was “nothing more than an honest mistake, and that this was not done for the purpose and intent to evade taxes,” this conduct still does not excuse Mr. Vallet from maintaining the required records under the clear statutory mandate in La.R.S. 47:337.29 and La. Admin. Code Tit. 61, pt. 1 § 4359, regardless of his actual intent.
The documentation necessary for the Clubs to meet the requirements for record keeping were readily available in the “z-tapes” which the trial court found were a part of the system utilized by the Clubs to maintain their nightly records. Mr. Vallet admitted that he used the “z-tapes” to prevent employee theft by making sure the bartenders and managers had cash in the register to match the sales totals on the “z-tapes.” Mr. Vallet testified that he even gave the bartenders a $10.00 nightly leeway on drink sales when the cash was balanced against the “z-tapes.” However, Mr. Vallet testified that the “z-tapes” were not kept with the nightly receipts or sent to the Clubs’ CPA for comparison with the bank deposits, but were destroyed.
Therefore, I would hold that the trial court committed reversible error in its’ legal determination that La.R.S. 47:337.29 was ambiguous, thus shifting the burden to *703 the Collector to prove that bank statements alone did not constitute “suitable records.” The burden of proving that it kept suitable records is squarely on the taxpayer, not the Collector.

\rjThe Application of La.R.S. 47:337. 28, La.R.S. 47:337. 28.1, and La.R.S. 47:337.35

The Collector in assignment of error two claimed that the trial court committed an error of law in holding that “the Collector’s arbitrary tax calculation methodology was improper.” I agree.
Louisiana Revised Statutes 47:337.28(A), cited by the trial court in its reasons, required the Collector to estimate the retail sales of a dealer who makes a “grossly incorrect report or a report that is false or fraudulent.” The Statute provides in pertinent part:
A. In the event any dealer fails to make a report and pay the tax as provided in this Chapter or in case the dealer makes a grossly incorrect report or a report that is false or fraudulent, the collector shall make an estimate of the retail sales of such dealer for the taxable period ... and of the gross amounts paid or charged for services taxable; and it shall be the duty of the collector to assess and collect the tax together with any interest and penalty that may have accrued thereon, which assessment shall be considered prima facie correct and the burden to show the contrary shall rest upon the dealer.
(Emphasis added.)
Thus, under the clear wording of the statute if, as here, the Collector determines that the Clubs filed a “grossly incorrect report,” the Collector shall make an estimate of the retail sales of such dealer for the taxable period. There is no additional requirement that the Collector must also establish that the Clubs’ report is “false or fraudulent.” The word “or” has a clear meaning in the statute. I would likewise find that the trial court committed legal error in imposing the burden on the Collector to prove the Clubs’ report was false or fraudulent. Rather, I would find that based on the record evidence, the Clubs’ report was “grossly incorrect” under the statute at issue. When the Collector does assess the tax owed, La.R.S. 47:337.28(A) clearly provides that the Collector’s “assessment shall be |seonsidered prima facie correct and the burden to show the contrary shall rest upon the dealer.”
It is an undisputed fact that the Clubs failed to pay the taxes due on the cash payments to the security personnel, which included the sheriffs deputies and the bouncers, as well as taxes due on the payments made to the bands that played at the Clubs. Thus, La.R.S. 47:337.28(A) applied and required the Collector to conduct the audit of the Clubs. It also provided that the assessment made by the Collector “shall be considered prima facie correct.” The burden to show that the Collector’s assessment of taxes owed was erroneous was squarely placed on the Clubs by virtue of the clear language of the statute. The Collector’s assessment correctly determined that the Club’s record keeping of its sales was also “grossly incorrect.”
Louisiana Revised Statutes 47:337.28.1 prohibits the Collector from “issuing an arbitrary assessment.” Louisiana Revised Statutes 47:337.28.1(A) further provides:
A. Notwithstanding any provision of this Chapter to the contrary, the collector shall be prohibited from issuing an arbitrary assessment. For purposes of this Chapter, the term “arbitrary assessment” shall mean an estimated assessment is *704 sued by the local collector which does not comply with R.S. 47:337.28, 47:337.48(A), or 47:337.53. However, no provision of this Chapter shall prevent the collector from determining correct tax as provided for in R.S. 47:337.35. An assessment shall not be considered an “arbitrary assessment” if the taxpayer does not provide records as required by R.S. 47:337.29 and/or R.S. 47:337.36. The taxpayer shall bear the burden of proving that the assessment was not in compliance with the law.
(Emphasis added.)
Therefore, pursuant to La.R.S. 47:337.28.1(A), an estimated assessment by the Collector pursuant to La.R.S. 47:337.28 cannot be considered “arbitrary” if, as I would hold in this case, the Clubs failed to provide “suitable records” pursuant to l3La.R.S. 47:337.29, in this case the “z-tapes,” and accurate records of cash payments to security personnel, for bouncers and for bands. As clearly provided in La.R.S. 47:337.28.1(A), the burden is on the Clubs to prove that the assessment by the Collector “was not in compliance with the law.” Mr. Vallet admitted destroying the very records he used for the Clubs’ internal purposes in calculating sales and balancing the amount sold against the cash collected to prevent employee theft. The Clubs, under these circumstances, could not prove that the Collector’s assessment was “not in compliance with the law.”
Therefore, the trial court committed legal error when it found, “[HJowever, assuming arguendo that Plaintiffs failed to maintain suitable records, the Collector’s arbitrary tax calculation methodology was improper.” The trial court improperly shifted the burden of proof when it focused on La.R.S. 47:337.35 in support of its finding that the Collector had engaged in an “arbitrary” estimated assessment.
Louisiana Revised Statutes 47:337.35(0) provides:
C. (1) Before using a sampling procedure to project the findings of an audit and establish a tax liability, the collector or his designee shall notify the taxpayer in writing of the sampling procedure he intends to use, including but not limited to how the tax will be computed, the population to be sampled, and the type of tax for which the tax liability will be established.
(2) The sampling procedure ■ used shall produce a sample which shall reflect as nearly as possible the normal conditions under which the business was operated during the period to which the gudit applies. If either the taxpayer or the collector can demonstrate that a transaction in a sample for a particular time period is not representative of the taxpayer’s business operations during that time period, the transaction shall be eliminated from the sample and shall be separately determined in the audit.
(3) If the taxpayer demonstrates that any sampling procedure used by the collector was not developed or applied in accordance with generally recognized sampling techniques, that portion of the audit | ^established by a projection based upon the development or application of the disputed sampling procedure shall be replaced by a projection based upon a new sample that conforms to generally recognized sampling techniques.
(4) Generally recognized sampling techniques and standards set forth by the American Institute of Certified Public Accountants shall be used as guidance in developing audit sampling techniques for purposes of this Section.
In focusing on La.R.S. 47:337.35(0(1), the trial court found that the Collector *705 failed to notify the Clubs “in writing” of the sampling procedure the Collector intended to use “[bjefore using a sampling procedure to project the findings of an audit and establish tax liability.” The trial court further found, “While the [Clubs] agreed to the fact that the auditor would sample three months for each of the four years at issue, [the Clubs] never agreed to the sampling procedure or how the tax will be computed. In addition, it is undisputed that the sampling procedure was never put into writing.” Again, the trial court’s analysis, affirmed by the majority, improperly shifted the burden from the Clubs to the Collector to prove its assessment was in compliance with law.
Moreover, the Collector’s initial estimated assessments of both Clubs, classified by the trial court as “not a formal assessment,” were accompanied by a January 10, 2010 correspondence from Jonathan B. Thomas, Field Auditor for the Collector (Mr. Thomas) to Mr. Darrell Morris, CPA for the Clubs (Mr. Morris). The correspondence included a detailed listing of the audit procedures utilized by the Collector in determining the initial estimated assessments, and followed this introductory statement from Mr. Thomas, which I quote here in pertinent part:
IriDear Mr. Morris:
Enclosed you will find a Notice of Collector’s Intent to Assess for taxes due Calcasieu Parish School System. Audit work papers are attached for your review.
During an examination of Cowboys Night Club and Yesterdays, it was determined that there was a discrepancy in the reporting of sales transactions during the audit period. The information provided to this office indicates the sales were routinely understated which led to the issuance of the Notice of Collector’s Intent to Assess for Taxes Due.
The sales tax returns were unable to be reconciled due to the lack of support for the amounts on sales tax returns such as z tapes, shift change reports etc. Consequently, all purchases of beer and liquor had to be reviewed. These purchases were included on the audit and marked up to determine the sales that should have been reported to this office. These sales figures were then used in the calculation to determine the cover charges that should have been reported to as sales. This procedure was used for both Cowboys and Yesterdays.
Upon receipt of the January 10, 2010 correspondence, on February 11, 2010, Mr. Morris, on behalf of the Clubs, timely protested the initial estimated assessment and stated, “We are writing to protest the tax assessment made by the sales tax office, regarding our client [Clubs]. We are appealing the tax, interest, and penalty due per your office. We do not agree with the assumptions your office made concerning prices, entry fees, or amounts of drinks per liter. We are requesting a hearing concerning this audit.”
Subsequent to this timely protest by the Clubs, the record reflects documentation received by the Collector from Mr. Morris indicating the loss of inventory and closure of both Clubs due to Hurricanes Rita and Ike. Mr. Morris further provided information to the Collector concerning cover charges and their amounts, giveaways, and free drinks provided for a number of entities, as well as payment for various bands used by the Clubs.
[1gUpon receiving this information from the Clubs, provided gradually over a period of six months, the initial assessment for each Club was reduced a total of three different times over that six month period, as outlined in the trial court’s Reasons. *706 Yesterdays’ initial assessment of taxes due was reduced from $217,190.49 to $85,353.60. Cowboy’s assessment was reduced from $219,161.87 to $29,292.42. The Collector used the proper procedure and decreased assessments upon the receipt of information from the Clubs, who had the burden of proof. Calcasieu Parish School Bd. v. Parker, 02-339 (La.App. 3 Cir. 10/2/02), 827 So.2d 543, writ denied, 02-2719 (La.1/10/03), 834 So.2d 440. The Collector then showed positive good faith by reducing its’ audit figures based on records supplied gradually by the Clubs.
The trial court, affirmed by the majority, was in error when it found the discrepancy between the initial and the final assessment provided a basis for its finding that the Collector was required to employ an alternative methodology in calculating the taxes, interest and penalties due by the Clubs. The trial court stated:
Furthermore, the Collector’s initial assessment (although not a formal assessment) of Cowboy’s unpaid taxes for the period in question was $219,161.87, while its’ final assessment was $29,292.87. Based on these figures, the Collector initially overestimated the amount of Cowboy’s unpaid taxes by 748%. Such variance creates concern with the Court and warrants a determination as to whether the Collector could have employed an alternative methodology that would produce a more predictable and accurate estimate.
As previously stated, the Collector was required to conduct an estimated audit based on the Clubs lack of suitable records pursuant to La.R.S. 47:337.29 and the failure of the Clubs to report the taxes due for the “services taxable” rendered by the security personnel and the bands pursuant to La.R.S. 47:337.28. Thus, the |13fact that the original estimated audit was reduced upon information and documentation provided by the Clubs to the Collector does not supply the support necessary for the trial court’s determination that the Collector should have used an alternative methodology.
The Clubs had the burden of proof under La.R.S. 47:337.28.1, to maintain suitable records. The trial court was precluded from making a determination that the estimated audit conducted by the Collector was “arbitrary,” when the Clubs’ actual records were destroyed by its owner. The burden of proof remained with the Clubs to show that the audit conducted by the Collector “was not in compliance with the law.” La.R.S. 47:337.28.1(A). The Clubs failed to present any evidence that the audit methods used did not comply with the requirements of either La.R.S. 47:337.28(A) or 47:337.35(A). Neither of these statutes incorporates any specific estimating standards.
Only when a “sampling procedure” is utilized by the Collector, pursuant to La. R.S. 47:337.35(B) and (C), is the Collector required to seek guidance from “[generally recognized sampling techniques and standards set forth by the American Institute of Certified Professional Accountants.” The Clubs’ CPA, Mr. Morris, presented no testimony at trial to rebut the statutory presumption that the Collector followed the proper sampling techniques utilized in the initial estimated assessment. He additionally did not offer any testimony that the manuals used by the Collector for guidance failed to comply with La.R.S. 47:337.35(0, and did not comport with “[gjenerally recognized sampling techniques and standards set forth by the American Institute of Certified Public Accountants.”
To the contrary, the uncontradicted evidence demonstrated that the initial estimated audit was conducted by the Collector based on a “mark-up analysis from *707 | utwo tax manuals, The California Audit Manual for Bars and Restaurants and the IRS Audit Technique Guide for Bars and Restaurants.” The California Manual provided, “This is an advisory publication providing directions to staff administering the Sales and Use Tax Law Regulations.” The trial court excluded both manuals from evidence, but allowed the Collector to submit both as Defense Proffers 1 and 2. The Collector argued that pursuant to La. Code Evid. art. 801(C), the manuals were not hearsay, but were “offered to show that the auditors consulted generally-recognized accounting techniques in developing their assessment, not to prove the truth of the manuals’ contents.” The Collector further cited case law in support of its use of the manuals, demonstrating that other jurisdictions had recognized both manuals in similar cases involving the audits of bars and restaurants.[3]
I would find that the trial court erred in its exclusion of the Collector’s Defense Proffers 1 and 2, which are obviously relevant to show that the Collector used a methodology that comported with La.R.S. 47:337.35(C)(4), which required, “Generally recognized sampling techniques and standards set forth by the American Institute of Certified Public Accountants shall be used as guidance in developing sampling techniques for purposes of the Section.” Pursuant to Arledge v. Bell, 463 So.2d 856 (La.App. 2 Cir.1985), this court is allowed to consider relevant proffered evidence on appeal. I would find that the manuals relied on by the Collector as guidance and accepted by courts of other states to be relevant to the determination of the methodology utilized by the Collector in its’ initial 11Bestimated audit of the Clubs. The sampling method used by the Collector was proper under the law.
Louisiana Revised Statutes 47:337.35(C)(4) further prevented the trial court from accepting the alternative methodology offered into evidence by the Clubs. Therefore, I would find the trial court erred in finding that the Collector was required to use the alternative methodology in question contained in a “presentation by the Louisiana Association of Tax Administrators (LATA) entitled, Audits of Bars, Lounges and Restaurants,’ ” submitted into evidence by the Clubs. I would find that the Collector’s assignment of error two has merit and find that the trial court committed an error of law in its’ holding that “the Collector’s arbitrary tax collection methodology was improper.” For the same reasons, I disagree with the majority’s treatment of this issue.

Assignment of Error Three

The Collector argues that the trial court erred in granting attorney fees to the Clubs as the “prevailing party” pursuant to La.R.S. 47:337.13.1(B)(1):
B. (1) Except as otherwise provided for in Paragraph (3) of Subsection A of this Section, the prevailing party in a dispute, contest, or other controversy involving the determination of sales and use tax due shall be entitled to reimbursement of attorney fees and costs, not to exceed ten percent of the taxes, penalties, and interest at issue, unless the position of the non-prevailing party is substantially justified. The prevailing party is defined as the party which has substantially prevailed with respect to the amount in controversy or substan *708 tially prevailed with respect to the most significant issue or set of issues presented. A position is substantially justified if it has a reasonable basis in law and fact. The reimbursement amount for attorney fees and costs shall be subject to the discretion of the court as to reasonableness.
(Emphasis, added.)
I would hold that the trial court erred as a matter of law in finding in favor of 11fithe Clubs and against the Collector. In my view, the Clubs are not the prevailing party and the issue of whether the Collector was “substantially justified” in its assessment such that the Clubs are entitled to attorney fees is rendered moot. I dissent from the majority’s affirmation of the trial court’s award of attorney fees to the Clubs.

Assignment of Error Four

The Collector argues that the trial court erred in failing to grant a new trial and failing to admit evidence submitted at the hearing for new trial. Considering the ruling I propose, this assignment of error is rendered moot.

Assignment of Error Five

On April 15, 2013, Yesterdays filed an “Amended Petition For Refund,” claiming prescription for the tax years 2005 and 2006. Yesterdays’ Amended Petition For Refund was prompted by discussions between counsel during a break in the trial proceedings after trial on the merits had already begun, which revealed that the Collector was no longer in possession of a document entitled “AGREEMENT TO SUSPEND PRESCRIPTION OF SALES AND USE TAXES ADMINISTERED BY THE CALCASIEU PARISH SCHOOL SYSTEM” (Waiver) for Yesterdays. The document at issue was additional evidence of the parties’ agreement to extend the prescriptive period for Yesterdays for the tax years 2005 and 2006 to December 31, 2010. Counsel for the Collector argued .that the prescriptive period for the audit of Yesterdays for the tax years 2005 and 2006 was properly extended by agreement until December 31, 2010, even though it no longer possessed the document evidencing that agreement.
I would hold that the trial court committed legal error in sustaining the Taxpayer’s exception of prescription on this issue, filed during a break in the trial 117proceedings. While an exception of prescription may be filed at any time, in this case the Taxpayer had already made a judicial confession removing the issue from consideration at the trial on the merits.
Louisiana Civil Code Article 1853 defines judicial confession as follows:
A judicial confession is a declaration made by a party in a judicial proceeding. That confession constitutes full proof against the party who made it. A judicial confession is indivisible and it may be revoked only on the ground of error of fact.
In the case of Traína v. Sunshine Plaza, Inc., 03-1003, p. 6 (La.12/3/03), 861 So.2d 156, 160, the supreme court held that “a judicial confession has the effect of waiving evidence relating to the subject matter of the admission and withdrawing the subject matter of the confession from issue.” There is no need to determine the issue of prescription if one of the parties made a judicial confession as to the “period in question.”
Yesterdays’ original “Petition For Refund,” filed on October 28, 2010, which was the initial pleading in this litigation, stated in pertinent part:
2.
During the period of January 1, 2005 and December 31, 2008 (“the period in question”), Yesterdays operated as a *709 night club/bar in Lake Charles, Louisiana.
3.
During the period in question, Yesterdays properly calculated and timely paid parish sales/use tax based upon the total receipts from its bar operations.
4.
On August 26, 2010, the Department issued a $155,662.95 assessment to Yesterdays for additional taxes ($85, 353.60), interest ($48,970.86), and penalties ($21,338.47). A copy of the Department’s revised Notice of Assessment is attached as Exhibit 1.
I is5-
Yesterdays disputed the assessment and, pursuant to La.R.S. 47:476 and 47:337.63 and corresponding provision in the local ordinances for the Parish of Calcasieu and the political subdivisions located therein, on September 29, 2010, paid, UNDER PROTEST $155,662.95 to the Department, representing sales/use taxes calculated as owed by the Department from Yesterdays’ operations for the period in question. A copy of Yesterdays’ September 29, 2010 letter to the Department and its check no 516 are attached as Exhibits 2 and 3, respectively-
[[Image here]]
7.
Yesterdays shows that the Department assessment of additional sales/use tax for the period in question lacks any basis in law or fact, and that Yesterdays has properly and timely paid all applicable sales and use tax from its operations.
(Second emphasis ours.)
Yesterdays’ Amended Petition For Refund, filed during trial on April 15, 2013, adding the following paragraph to its original Petition For Refund:
7A.
Yesterdays alleges that any claim for taxes, interest and penalties for the period January 1, 2005-December 31, 2006, is prescribed.
The Louisiana Supreme Court in Traina, 861 So.2d at 159, further discussed the application of La.Civ.Code art. 1853, as follows:
The well settled jurisprudence establishes that an admission by a party in a pleading constitutes a judicial confession and is full proof against the party making it. Taboni ex rel. Taboni v. Estate of Longo, 01-2107 (La.2/22/02), 810 So.2d 1142; Starns v. Emmons, 538 So.2d 275 (La.1989); Smith v. Board of Trustees, 398 So.2d 1045 (La.1981); Cheatham v. City of New Orleans, 378 So.2d 369 (La.1979). A judicial confession has the effect of waiving evidence as to the subject of the admission. Crawford v. Deshotels, 359 So.2d 118 (La.1978); Jackson v. Gulf Ins. Co., 250 La. 819, 199 So.2d 886 (1967); Farley v. Frost-Johnson Lumber Co., 133 La. 497, 63 So. 122 (1913). A declaration made by a party’s attorney or mandatary has the same |1fleffect as one made by the party himself. La.Civ.Code art. 1853, cmt. (b).
In reversing the court of appeal and reinstating the trial court’s judgment in favor of Traína, the supreme court stated:
The court of appeal recognized that Sunshine judicially confessed that it had an oral contract with Traína, but reasoned that Sunshine revoked its admission when it filed a subsequent pleading denying any contractual relationship existed. We disagree. La.Civ.Code art. 1853 explicitly provides that a judicial confession may be revoked only on the ground of error of fact. At no time did Sunshine assert its judicial confession of an oral contract was made in error. To *710 the contrary, Sunshine’s amended answer confirmed Sunshine’s earlier allegation of an oral contract by continuing to allege, in the alternative, that an oral contract existed. Therefore, we must conclude based on the record before us that Sunshine’s judicial confession of an oral contract was never revoked on the ground of error of fact.
Id. at 160.
Similarly, in this case, in its original Petition For Refund, Yesterdays specifically pled that January 1, 2005 to December 31, 2008 was the tax “period in question.” The “period in question” is referred to throughout the original Petition For Refund as the basis for Yesterdays’ payment of the Collector’s assessment “UNDER PROTEST,” and prayer for judgment “in its favor,” ordering a refund on all taxes paid under protest.
Exhibits One and Three attached in support of the original Petition For Refund also evidence the “period in question,” as “Period(s): 1/05-12/08.” Exhibit Two, correspondence, dated September 29, 2010, from Yesterdays’ CPA, Mr. Morris, also references payment of “$155,662.95 which is being submitted in payment of the proposed assessment of taxes and interest, and penalties for the period January 2005 thru December 2008.”
| ¡^Yesterdays’ Amended Petition For Refund “alleges that any claim for taxes, interest, and penalties for January 1, 2005-December 31, 2006, is prescribed.” However, considering the statements made in the original Petition For Refund and the exhibits attached in support thereof, I would find that Yesterdays has made a judicial confession that the “period in question” encompassed “January 1, 2005 and December 31, 2008.” In its Amended Petition For Refund, Yesterdays did not assert that its judicial confession of the period in question, January 1, 2005 and December 31, 2008, “was made in error.” See Traína, 861 So.2d at 160. Therefore, based on the record and pursuant to La. Civ.Code art. 1853,1 conclude that Yesterdays’ judicial confession that the tax period in question was January 1, 2005 through December 31, 2008, and “was never revoked on the ground of error of fact.” See Traína, 861 So.2d at 160.
The trial court’s ruling that prescription had not been interrupted for the taxes owed by Yesterdays for 2005 and 2006 was based solely on the Collector’s failure to produce at trial the written waiver of prescription agreement. However, the judicial confession of Yesterdays in its original Petition For Refund and exhibits was never revoked, and required no further evidence to establish that Yesterdays had validly consented to waive prescription for the tax years 2005 and 2006.
I would find that prescription was interrupted pursuant to La.Civ.Code art.1853 based on the judicial confession made in Yesterdays’ original Petition For Refund filed on October 28, 2010. Therefore, the taxes, penalties, and interest owed by Yesterdays for the tax years 2005 and 2006 are not prescribed and are now owed in full by Yesterdays, as well as those for 2007 and 2008, which had not prescribed. I dissent from the majority’s contrary holding.
^CONCLUSION
For the foregoing reasons, I would reverse the February 3, 2014 judgment of the trial court in its entirety and find in favor of the Calcasieu Parish Sales and Use Tax Department and against Yester-dáys of Lake Charles, Inc. in the amount of $155,662.95 in taxes, interest, and penalties, and against Cowboy’s Nightlife, Inc. in the amount of $49,973.99 in taxes, interest, and penalties. Costs of this appeal *711 should be assessed to Yesterdays of Lake° ⅞ Xfl ⅛ ⅞* j ⅞ ¡Z $ 1

. The State did conduct an "audit” at one point, but there is no specific evidence in the record as to what was considered or whether the State even looked ■ at the issue of the destroyed z-tapes.

. Louisiana Civil Code Article 5 provides, "No one may avail himself of ignorance of the law.”

. The manuals referenced in Collector’s Proffer One and Two were utilized in the following cases as a basis for audits of bars and restaurants. These cases included Two Mac, Inc. v. Comm’r of Revenue, 7469-R, 2004 WL 612911 at 38 n. 2 (Minn. Tax Ct. Mar. 9, 2004); Edgmon v. Comm’r of Revenue, 66 T.C.M. (CCH) 1093 at 4 (T.C.1993); Yilmaz, .Inc. v. Dir., Div. of Taxation, 22 N.J.Tax 204, 230 (N.J. Tax Ct.2005).