| IPF22, LLC | * | NO. 2024-CA-0552 |
|---|---|---|
| VERSUS | * | |
| | | COURT OF APPEAL |
| ARIANNE E. SHOLES AND | * | |
| STATE OF LOUISIANA, | | FOURTH CIRCUIT |
| DIVISION OF | * | |
| ADMINISTRATION, OFFICE | | STATE OF LOUISIANA |
| OF COMMUNITY | * * * * * * * | |
| DEVELOPMENT | | |

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2023-00317, DIVISION "D"
Honorable Monique E. Barial, Judge
* * * * * *
**Judge Paula A. Brown**
* * * * * *

(Court composed of Judge Paula A. Brown, Judge Tiffany Gautier Chase, Judge Dale N. Atkins)

James E. Uschold
Mark J. Boudreau
JAMES E. USCHOLD, PLC
700 Camp Street, Suite 317
New Orleans, LA 70130

COUNSEL FOR PLAINTIFF/APPELLEE

Norman Sundiata Haley
HALEY LAW FIRM, LLC
650 Poydras Street
Suite 2317
New Orleans, LA 70130

COUNSEL FOR DEFENDANT/APPELLANT

**REVERSED AND REMANDED**
**APRIL 3, 2025**

PAB
TGC
DNA

This is a tax sale case.  Appellant, Arianne E. Sholes, appeals the district court's April 9, 2024 judgment, which denied her motion for new trial.  The motion for new trial asserted that Ms. Sholes was denied due process when the district court granted summary judgment on January 4, 2024, in favor of Appellee, IPF22, LLC ("IPF22"), and quieted title to IPF22's 100% interest in immovable property located in New Orleans, Louisiana.  For the reasons that follow, we reverse the district court's January 5, 2024 judgment and remand for further proceedings consistent with this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

In March of 1992, Diane Sholes ("Decedent") executed an act of sale to acquire 1909 Dumaine Street, New Orleans, La. 70016 (the "Property"), the ownership of which is at issue in the case *sub judice*.  According to the record, Decedent died intestate on August 15, 2003.  Her only surviving heirs at the time of her death were her six children—Arianne Sholes ("Ms. Sholes"), Keith Sholes, Kevin Sholes, Raymond Sholes, Angela Sholes, and Ranee Sholes.  On April 12, 2016, the City of New Orleans conducted a tax sale to collect unpaid taxes on the Property for the years spanning 2013-2015 and awarded a 100% interest in title to

1

the Property to Craig Elliot Balsinger ("Mr. Balsinger"), as evidenced by a tax sale certificate executed on May 5, 2016, and recorded on May 17, 2016, at NA 2016-19543 and CIN 598572. As will be more fully discussed below, the redemptive period for the property expired on May 17, 2019.

On August 23, 2019, Ms. Sholes filed a petition for possession of 100% of the estate of Decedent, to which she attached affidavits from her five siblings renouncing any interest in the succession. Several months later, on February 4, 2020, the district court issued a written judgment of possession in favor of Ms. Sholes. The judgment was recorded into the conveyance records of the Orleans Parish Clerk of Court on November 24, 2021, at NA 2021-48553 and CIN 702550.

Mr. Balsinger transferred his interest in the Property to IPF22 in December of 2022, which was then recorded on December 28, 2022, at NA 2022-48939 and CIN 721735. Shortly thereafter, IPF22 filed a *Petition to Confirm and Quiet Title and for Declaratory Judgment* (the "Petition") on January 11, 2023, seeking to have the court declare, *inter alia*, that Ms. Sholes had been duly notified of the tax sale and that IPF22 was entitled to be declared the 100% owner of the Property. Notably, paragraph 17 of the Petition is a notice that advises:

**IMPORTANT NOTICE
REGARDING TAX SALE**

**PLAINTIFF IS THE HOLDER OF TAX SALE TITLE TO A 100% INTEREST IN THE SUBJECT PROPERTY BY VIRTUE OF A TAX SALE. PLAINTIFF'S TITLE TO AND FULL OWNERSHIP OF THAT INTEREST IN THE PROPERTY WILL BE CONFIRMED UNLESS A PROCEEDING TO ANNUL THE TAX SALE IS INSTITUTED WITHIN <u>TEN (10) DAYS</u> AFTER THE DATE OF SERVICE OF THE PETITION AND CITATION.**

(bold in original, underline added). Paragraph 18 informs that:

IPF22 also provides notice of the above referenced tax sale pursuant to [La. R.S.] 47:2157. Exhibit B is the notice and is being served with the service of the petition.

The notice of tax sale provided, in part:

**NOTICE OF TAX SALE**
**THIS IS AN IMPORTANT LEGAL NOTICE.**
**PLEASE READ IT CAREFULLY.**
**YOU WILL RECEIVE NO FURTHER NOTICE.**

\* \* \*

**Tax sale title to the above-described property has been sold for failure to pay taxes.** You have been identified as a person who may have an interest in this property.

Your interest in the property **will be terminated** if you do not file a proceeding to annul the tax sale in accordance with the law within <u>sixty (60) days</u> of the date of this notice.

**NOTE**: This notice does not extend other deadlines that may apply. It is possible any interest you may have had was previously terminated or may terminate in less than sixty (60) days.

(bold in original, underline added).

The record reflects that Ms. Sholes was served with the Petition on January 25, 2023. Ten days later, in a pro se capacity, Ms. Sholes filed a *Motion for Extension of Time to File Responsive Pleadings* on February 6, 2023, which the district court granted, allowing Ms. Sholes until March 8, 2023, to file responsive pleadings. Ms. Sholes then filed another *Motion for Extension of Time to File Responsive Pleadings* on March 10, 2023, which was also granted, extending the deadline until March 31, 2023. On March 23, 2023, Ms. Sholes' new counsel filed an answer and reconventional demand on her behalf, alleging that the tax collector of the City of New Orleans failed to give notice to all interested parties of the tax delinquency and subsequent tax sale and failed to file a *procès-verbal* in the public

3

records. For those reasons, Ms. Sholes asserted that the original tax sale to Mr. Balsinger was an absolute nullity.

IPF22 filed a motion for summary judgment on September 5, 2023, wherein it requested that the district court terminate any interest Ms. Sholes might have in the Property, declare IPF22 to be the 100% owner of the property and dismiss all of Ms. Sholes' claims, including the action to annul, with prejudice. Notably, no opposition was filed to the motion for summary judgment. The matter came for hearing on December 14, 2023. At the hearing, counsel for Ms. Sholes' confirmed that no opposition had been filed. Limited argument was presented by both parties, followed by the presiding judge orally rendering judgment, which granted summary judgment in favor of IPF22. A written judgment was mailed to the parties on January 4, 2024.

Ms. Sholes timely filed a motion for new trial on January 10, 2024, which the district court set for hearing on March 21, 2024. Following that hearing, the district court denied Ms. Sholes' motion for new trial and mailed the notice of judgment on April 9, 2024. It is from that judgment that Ms. Sholes now appeals.

### JURISDICTION

"Before considering the merits of any appeal, an appellate court has 'the duty to determine *sua sponte* whether [proper] jurisdiction exists, even when the parties do not raise the issue.'" *Breston v. DH Catering, LLC*, 23-0460, 0461, p. 13 (La. App. 4 Cir. 2/5/24), 384 So.3d 953, 962 (alteration in original) (quoting *Succession of Hickman,* 22-0730, p. 5 (La. App. 4 Cir. 3/15/23), 359 So.3d 584, 589). In this appeal, Ms. Sholes ostensibly seeks to appeal the district court's April 9, 2024 denial of her motion for new trial. However, as this Court has explained, "the denial of a motion for new trial is not a final, appealable judgment." *Id.* at p.

4

14, 384 So.3d at 962 (quoting *Succession of Hickman*, 22-0730, p. 6, 359 So.3d at 590). Nevertheless, "the reviewing court 'consider[s] an appeal of the denial of a motion for new trial as an appeal of the judgment on the merits of the case . . . when . . . it is clear from the appellant's brief that [she] intended to appeal the merits of the case.'" *Succession of Hickman*, 22-0730, p. 6, 359 So.3d at 590 (quoting *Clotworthy v. Scaglione*, 11-1733, p. 3 (La. App. 4 Cir. 5/23/12), 95 So.3d 518, 520).

It is clear from Ms. Sholes' brief to this Court that she seeks to appeal the underlying merits of the district court's January 4, 2024 judgment, which granted summary judgment in favor of IPF22. Thus, we find that we have jurisdiction to consider this appeal because "the granting of summary judgment is a final judgment with the same effect as if a trial had been had upon evidence regularly adduced." *Breston*, 23-0460, 461, p. 14, 384 So.3d at 962 (quoting *Precept Credit Opportunities Fund, LP v. Dave*, 23-0104, 0105, p. 10 (La. App. 4 Cir. 10/3/23), 376 So.3d 210, 218).

## STANDARD OF REVIEW

"[T]his Court reviews the granting of '[a] summary judgment on appeal *de novo*, using the same criteria that govern the [district] court's determination of whether summary judgment is appropriate.'" *Johnson v. Palazzo*, 22-0502, p. 3 (La. App. 4 Cir. 12/7/22), 353 So.3d 1022, 1023 (quoting *Cooper v. Brisco*, 22-0196, p. 4 (La. App. 4 Cir. 10/18/22), 366 So.3d 552, 555). "Generally, on a motion for summary judgment, the burden of proof remains with the mover." *Id.* "But, if the moving party will not bear the burden of proof on the issue at trial and identifies an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense, then the non-moving party must produce

5

factual support sufficient to counter that assertion and establish that he will be able to satisfy his evidentiary burden of proof at trial." *Id.* (citing La. C.C.P. art. 966(D)(1)). "However, if the opponent of the motion cannot do so, there is no genuine issue of material fact and summary judgment will be granted." *Id.* (quoting *Cooper*, 22-0196, p. 4, 366 So.3d at 555-56). "As noted by this Court in *Heirs of John Beckwith LLC v. Sims*, 20-0476, p. 16 (La. App. 4 Cir. 3/10/21), 315 So.3d 306, 320, '[t]he summary judgment procedure can be an appropriate manner by which disputes in property ownership are resolved.'" *Id.* at p. 3, 353 So.3d at 1024 (quoting *Cooper*, 22-0196, pp. 4-5, 366 So.3d at 556).

## DISCUSSION

Ms. Sholes raises three issues for our consideration.[1] However, our review of the opposing arguments finds that there are two prominent inquiries that are determinative: (1) Whether Ms. Sholes' action for a redemption nullity was timely filed; and (2) Whether granting IPF22's motion for summary judgment was appropriate when considering due process concerns. Before turning to the merits of this appeal, we will first outline the pertinent law pertaining to tax sales.

*Applicable Law*

"Article VII § 25 of the Louisiana Constitution establishes the basis upon which property owners who are in arrears for payment of *ad valorem* taxes may be

---

[1] Specifically, the issues raised by Ms. Sholes are:

1. Whether the tax collector violated constitutional due process by failing to notify all six heirs despite knowing their identities.

2. Can conflicting state laws override the constitutional mandate to provide adequate notice under the Fourteenth Amendment?

3. Whether summary judgment was improperly granted despite genuine issues of material fact regarding the adequacy of the notice provided.

divested of their ownership rights in immovable property."[2] *Cloud v. Gibson*, 23-0435, p. 11 (La. App. 4 Cir. 7/30/24), 399 So.3d 604, 611 (quoting *Cooper*, 22-0196, p. 5, 366 So.3d at 556). "In an effort to modernize and clarify the procedures associated with this constitutional authority to conduct tax sales, in 2008 the Louisiana Legislature enacted Louisiana Revised Statutes Title 47, subtitle 3, chapter 5, which became effective on January 1, 2009." *Id.* at pp. 11-12, 399 So.3d at 12. One of the new concepts included with this reform measure appeared in La. R.S. 47:2286, which provides:

---

[2] Louisiana Constitution Article VII, § 25 provides, in pertinent part:

> Section 25. **(A)(1) Tax Sales**. There shall be no forfeiture of property for nonpayment of taxes. However, at the expiration of the year in which the taxes are due, the collector, without suit, and after giving notice to the delinquent in the manner provided by law, shall advertise for sale the property on which the taxes are due. The advertisement shall be published in the official journal of the parish or municipality, or, if there is no official journal, as provided by law for sheriffs' sales, in the manner provided for judicial sales. On the day of sale, the collector shall sell the portion of the property which the debtor points out. If the debtor does not point out sufficient property, the collector shall sell immediately the least quantity of property which any bidder will buy for the amount of the taxes, interest, and costs. The sale shall be without appraisement. A tax deed by a tax collector shall be prima facie evidence that a valid sale was made.
>
> \* \* \*
>
> **(B) Redemption**. (1) The property sold shall be redeemable for three years after the date of recordation of the tax sale, by paying the price given, including costs, five percent penalty thereon, and interest at the rate of one percent per month until redemption.
>
> \* \* \*
>
> **(C) Annulment**. No sale of property for taxes shall be set aside for any cause, except on proof of payment of the taxes prior to the date of the sale, unless the proceeding to annul is instituted within six months after service of notice of sale. A notice of sale shall not be served until the final day for redemption has ended. It must be served within five years after the date of the recordation of the tax deed if no notice is given. The fact that taxes were paid on a part of the property sold prior to the sale thereof, or that a part of the property was not subject to taxation, shall not be cause for annulling the sale of any part thereof on which the taxes for which it was sold were due and unpaid. No judgment annulling a tax sale shall have effect until the price and all taxes and costs are paid, and until ten percent per annum interest on the amount of the price and taxes paid from date of respective payments are paid to the purchaser; however, this shall not apply to sales annulled because the taxes were paid prior to the date of sale.
>
> **(D) Quieting Tax Title**. The manner of notice and form of proceeding to quiet tax titles shall be provided by law.

No tax sale shall be set aside except for a payment nullity, redemption nullity, or a nullity under [La.] R.S. 47:2162,[3] all of which are relative nullities. The action shall be brought in the district court of the parish in which the property is located. In addition, the action may be brought as a reconventional demand or an intervention in an action to quiet title under [La.] R.S. 47:2266 or as an intervention in a monition proceeding under [La] R.S. 47:2271 through 2280.

"'Redemption nullity' means the right of a person to annul a tax sale in accordance with [La.] R.S. 47:2286 because he was not duly notified at least six months before the termination of the redemptive period." La. R.S. 47:2122(10).

The "redemptive period," as defined by our constitution, explains that "[t]he property sold shall be redeemable for three years after the date of recordation of the tax sale." La. Const. art. VII, § 25(B)(1). "It is well settled that the [redemptive] periods provided in the Louisiana Constitution are peremptive." *Precept*, 23-0104, 0105, p. 15, 376 So.3d at 220 (quoting *Coastal Dev. Grp., Inc. of Greater New Orleans v. Lund*, 22-0598, p. 4 (La. App. 4 Cir. 1/11/23), 356 So.3d 1174, 1177). "[P]eremption is a period of time fixed by law for the existence of a right. Unless timely exercised, the right is extinguished upon the expiration of the peremptive period." *Id.* at p. 15, 376 So.3d at 221 (quoting La. C.C. art. 3458). "Peremption may not be renounced, interrupted, or suspended." *Id.* (quoting La. C.C. art. 3461). "Peremption differs from prescription in two respects: '(1) the expiration of the peremptive time period destroys the cause of action itself; and (2) nothing may interfere with the running of a peremptive time period.'" *Id.* (quoting *Coastal Dev. Grp.*, 22-0598, p. 4, 356 So.3d at 1177).

---

[3] Louisiana Revised Statutes 47:2162 provides, in pertinent part:

The tax collector or tax assessor for the political subdivision, or any other person acting on behalf of the political subdivision whose duties are to assess or collect *ad valorem* taxes for the political subdivision, shall not buy, either directly or indirectly, any property or tax sale title sold or offered for sale for ad valorem taxes imposed by that political subdivision.

Louisiana Revised Statutes 47:2287 dictates, in part, the timeframe in which a redemption nullity must be filed:

> A. Any action to annul a tax sale on grounds of a redemption nullity shall be brought before the earlier of:
>
> (1) Six months after a person is duly notified using a notice, other than the notice provided in [La.] R.S. 47:2156 that is sent between the time that the redemptive period ends and five years after the date of the recordation of the tax sale certificate.
>
> (2) If a person is duly notified more than five years after the date of the recordation of the tax sale certificate, sixty days after the person is duly notified.

And finally, La. R.S. 47:2122(4) provides, in relevant part:

> (4) "Duly notified" means, with respect to a particular person, that an effort meeting the requirements of due process of law has been made to identify and to provide that person with a notice that meets the requirements of [La.] R.S. 47:2156, 2157, 2206, 2236, or 2275, or with service of a petition and citation in accordance with R.S. 47:2266, regardless of any of the following:
>
> (a) Whether the effort resulted in actual notice to the person.

Because of the nature of the issues and arguments presented by both parties, we will address the questions before us in the manner and order we deem most efficient.

*Timeliness of Ms. Sholes' Reconventional Demand*

IPF22 contends that Ms. Sholes' action for nullity, styled as a reconventional demand, was preempted because it was not filed within the ten-day time limitation found in La. R.S. 47:2266, entitled *Procedure to Quiet Tax Titles*. This statute provides, in pertinent part:

> B. In all cases when tax titles have been quieted by prescription of five years under the provisions of Article VII, Section 25 of the Louisiana Constitution, the purchaser, donee, or his heirs or assigns may, either obtain a judgment of the court confirming the title by suit

9

in the manner and form in Subsection A of this Section,[4] except that the delay for answer shall be ten days instead of six months, provided that the failure to bring suit shall in no manner affect such prescriptive titles.

We previously outlined that, in this instance, the tax sale certificate was recorded on May 17, 2016, and the Petition was served on Ms. Sholes on January 25, 2023—well beyond the five-year period contemplated in La. R.S. 47:2266(B). However, we find IPF22's reliance upon this statute to be misplaced.

Ms. Sholes' reconventional demand implicates a lack of proper notice by the tax collector, which, as explained above, falls within the ambit of a challenge to the tax sale on the basis of a redemption nullity. As such, La. R.S. 47:2287,[5] entitled *Time in Which to File an Action for Nullity; Defenses*, clearly pronounces its applicability to this type of nullity and allows that when a property owner is duly notified of the tax sale over five years from the recordation of the sale, that person

---

[4] Subsection A sets forth:

> A. (1) After expiration of the redemptive period, an acquiring person may institute an ordinary proceeding against the tax sale parties whose interests the petitioner seeks to be terminated. The petition shall contain a description of the property, the time and place of the sale, and the name of the officer who made the sale, the page and record book and date of filing of the tax sale certificate, and for adjudicated properties sold or donated by a political subdivision, reference to the page of record book and date of filing of the sale or donation, notice that the petitioner is the holder of tax sale title to the property by virtue of tax sale or is the owner of the property by virtue of a sale or donation of adjudicated property, and notice that the title and full ownership in the property will be confirmed unless a proceeding to annul is instituted within six months after the date of service of the petition and citation. This suit shall be brought in the parish in which the property is located unless it lies in two or more parishes, in which case this suit may be instituted in either of the parishes.
>
> (2) The petition and citation shall be served as in ordinary suits; however, if a tax sale party is a nonresident of the state, is unknown, or his residence is unknown, the court shall appoint a curator ad hoc to represent him and receive service. The curator shall receive a reasonable fee for his services to be fixed by the court in each suit, which shall be taxed as costs of suit. If no proceeding to annul the sale has been instituted after the lapse of six months after the date of service of petition and citation, judgment shall be rendered quieting and confirming the title and the full ownership interest therein.

[5] See p. 9, *supra*.

has sixty days to bring a redemption nullity action. Moreover, La. R.S. 47:2287(C) sets forth that:

> When a nullity is asserted as a reconventional demand in a quiet title action or as an intervention in a quiet title action or monition proceeding, the nullity shall be asserted within the time specified for a reconventional demand or intervention in the action or proceeding.

Louisiana Code of Civil Procedure Article 1031 explains that a reconventional demand is defined as an incidental demand.[6] Louisiana Code of Civil Procedure article 1041 then directs that:

> An incidental demand is not barred by prescription or peremption if it was not barred at the time the main demand was filed and is filed within ninety days of date of service of main demand or in the case of a third[-]party defendant within ninety days from service of process of the third[-]party demand.

It is a well-settled tenet that "[t]he starting point in the interpretation of any statute is the language of the statute itself." *Sebble on Behalf of Estate of Brown v. St. Luke's #2, LLC*, 22-0620, p. 6 (La. App. 4 Cir. 3/6/23), 358 So.3d 1030, 1034 (quoting *Lepine v. Dep't of Wildlife & Fisheries*, 22-0160, p. 5 (La. App. 4 Cir. 10/5/22), 350 So.3d 988, 992). Additionally, "[w]hen a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." La. C.C. art. 9. *See also Sebble*, 22-0620, p. 6, 358 So.3d at 1035. Furthermore, even assuming *arguendo* that La. R.S. 47:2266 is applicable to a nullity action filed as a reconventional demand—Subsection B only references <u>an answer</u>—it is apparent that La. R.S. 47:2287 is the more specific statute to the scenario presented to us in the case *sub judice*. "As a general rule of

---

[6] Specifically, La. C.C.P. art. 1031(B) provides:

> Incidental demands are reconvention, cross-claims, intervention, and the demand against third parties.

11

statutory construction, a specific statute controls over a broader, more general statute." *Treas v. Koerner*, 20-0050, p. 8 (La. App. 4 Cir. 7/15/20), 364 So.3d 285, 290 (citing *Channelside Servs., LLC v. Chrysochoos Grp., Inc.*, 15-0064, p. 17 (La. App. 4 Cir. 5/13/16), 194 So.3d 751, 761). "Accordingly, where two statutes deal with the same subject matter, in the event of a conflict, the specific statute prevails over the statute more general in nature." *Id.* (citing *Channelside*, 15-0064, pp. 17-18, 194 So.3d at 761).

In support of its reading of La. R.S. 47:2266(B), IPF22 cites to *NAR Solutions, Inc. v. Kuhn* for the proposition that a failure to take action within the prescribed time period to annul the tax sale is determinative. 22-00425, p. 3 (La. 12/9/22), 354 So.3d 1176, 1178. While that premise may be true, we find the case itself to be easily distinguishable from the facts before us. In *NAR Solutions*, the defendant property owner was personally served with the petition to quiet title a little less than four and a half years after the tax sale certificate was recorded. The defendant filed no pleadings in response and ultimately title was quieted through a default judgment. The Supreme Court's only reference to La. R.S. 47:2266 was to quote from Subsection A, wherein it states that "[i]f no proceeding to annul the sale has been instituted after the lapse of six months after the date of service of petition and citation, judgment shall be rendered quieting and confirming the title and the full ownership interest therein." *Id.*, p. 4, 354 So. 3d at 1178. Thus, that case is completely inapposite to the applicability of La. R.S. 47:2266(B) in the instant matter. We find that La. R.S. 47:2287, which specifically outlines the time in which to file a nullity action, is clear and unambiguous, and there is no apparent conflict between it and La. R.S. 47:2266. From our plain reading of the applicable statutes, we conclude that Ms. Sholes had ninety days from the date of service of

the petition in order to file a petition for a redemption nullity by way of a reconventional demand—i.e., until April 25, 2023. Ms. Sholes' reconventional demand was filed on March 23, 2023. Accordingly, we find that Ms. Sholes' action to annul the tax sale was neither preempted nor prescribed when she filed it.[7]

*Due Process Violations by the Tax Collector*

Ms. Sholes relies on both Louisiana and federal jurisprudence for the proposition that defective pre-sale notice renders a tax sale an absolute nullity. She further argues that the identities of all heirs were known prior to the tax sale and should have been notified—not just one of the heirs. These arguments are misplaced. As we recently discussed extensively in *Cloud v. Gibson*, the Supreme Court found that proper post-sale notice was sufficient to cure any defects in pre-sale notice and satisfied the due process requirements found in the United States and Louisiana Constitutions. 23-0435, p. 20 (La. App. 4 Cir. 7/30/24), 399 So.3d 604, 617 (quoting *Spain v. H&H Invs., L.L.C.*, 23-0491, p. 4 (La. App. 4 Cir. 9/26/23), 382 So.3d 312, 314). The *Cloud* Court also explained that under the 2008 revisions, specifically the addition of La. R.S. 47:2286,[8] only three types of nullities apply to tax sales—a payment nullity, a redemption nullity, or a nullity

---

[7] *See* Peter S. Title, *Louisiana Real Estate Transactions in* 2 *Louisiana Practice Series* § 17:11 (2d ed. 2024):

> [T]he revision of the law of tax sales effective January 1, 2009[,] contains a specific provision that the three-year redemptive period is peremptive but does not contain a similar provision that the five-year period to annul a tax sale is peremptive. With respect to annulment of tax sales, the 2009 revision of the law of tax sales does not contain a statement that the five-year period is peremptive, and in fact, in La. [R.S.] 47:2266(B), refers to tax titles having been quieted by "prescription of five years" under the Article VII, Section 25 of the Louisiana Constitution of 1974 and provides that the failure to bring suit to quiet a tax title "shall in no manner affect such prescriptive titles."

[8] See p. 8, *supra*.

under La. R.S. 47:2162—none of which is an absolute nullity. *Id*. at p. 16, 399 So.3d at 614. Even more to the point, "[t]ax sales may no longer be attacked as absolute nullities." *Id*. (quoting *Stow-Serge v. Side by Side Redevelopment, Inc.*, 20-0015, p. 5 (La. App. 4 Cir. 6/10/20), 302 So.3d 71, 76). Nonetheless, the *Cloud* Court, citing *Cent. Props. v. Fairway Gardenhomes, LLC*, 16-1855, 1946, p. 10 (La. 6/27/17), 225 So.3d 441, 448, made clear that "the law in effect at the time of the tax sale is controlling regardless of when the case is adjudicated." *Id*. at p. 17, 399 So.3d at 615.

Ms. Sholes first cites to *Mennonite Board of Missions v. Adams* mainly for the principle that the due process clause of the Fourteenth Amendment to the United States Constitution requires a state to provide "notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." 462 U.S. 791, 795 (1983) (citation omitted). She then offers the case considered by our Supreme Court in *Smitko v. Gulf S. Shrimp, Inc.*, where, using that general principle from *Mennonite*, the Court held that the lack of pre-sale notice for tax delinquencies and for the sale itself were sufficient to declare the sale null and void, i.e., an absolute nullity. 11-2566, p. 15 (La. 7/2/12), 94 So.3d 750, 759. However, as we addressed in *Cloud*, *Smitko* dealt with a pre-revision tax sale, relied on La. R.S. 47:2180, a statute that was repealed in the 2008 revisions, and was superseded by statute as enunciated by the Supreme Court in *Cent. Props*. *Cloud*, 23-0435, p. 18, 399 So.3d at 615-16. This argument is without merit.[9]

---

[9] As noted, *supra*, Ms. Sholes also asserted that the tax collector did not perform their duty to file a *procès-verbal* into the public record. However, official 2008 comment (c) to La. R.S. 47:2155 instructs that, under the new tax sale law revisions, "the concept of a *procès-verbal* is eliminated." The Merriam-Webster dictionary defines *procès-verbal* as "in the civil law of

Nevertheless, we find compelling the due process concerns raised by Ms. Sholes as addressed by this Court in *Jon Loy, Inc. v. Allen*, 23-0645, p. 3 (La. App. 4 Cir. 4/18/24), ___ So.3d ___, ___, 2024 WL 1671960, at *2, *writ denied*, 24-00718 (La. 10/1/24), 393 So.3d 870. In that case, we acknowledged that, pursuant to La. R.S. 2155(B), the tax sale certificate is *prima facie* evidence that the tax sale is valid. However, finding that the tax sale certificate contradicted itself on its face, the *Jon Loy* court reasoned that the burden remained with the plaintiff to provide evidence that it had duly notified the defendant of her rights to redeem or nullify the sale. Since the tax sale certificate averred that the tax collector had "strictly complied with each and every requirement of the laws relating to delinquent taxes and tax debtors," this Court determined that the district court erred in granting summary judgment to quiet title in favor of the plaintiff when genuine issues remained as to whether all of the statutory formalities for notice had been complied with.

These concerns are particularly salient because "under the Fourteenth Amendment to the United States Constitution and La. Const. art. I, § 2, deprivation of property by adjudication must be preceded by notice and opportunity to be heard appropriate to the nature of the case." *Cloud*, 23-0435, p. 21, 399 So.3d at 617 (quoting *Cent. Props.*, 16-1855, p. 8, 225 So.3d at 447); *see also Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950). As noted in *Cloud*, the *Cent. Props.* Court explained that "[i]n *Mullane*, the Supreme Court established that '[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated under

---

Louisiana: an official written record of a proceeding (as a judicial sale of property)." MERRIAM-WEBSTER, https://www.merriam-webster.com/legal/proc%C3%A8s%20verbal (last visited April 3, 2025).

all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Cloud*, 23-0435, p. 21, 399 So.3d at 617 (quoting *Cent. Props.*, 16-1855, 1946, p. 9, 225 So.3d at 447).

Chapter 3 of the Louisiana Code of Evidence governs the effect in civil cases of presumptions and *prima facie* evidence. Louisiana Code of Evidence Article 308 provides, in pertinent part, "[l]egislation providing that a document or other evidence is prima facie evidence or proof of all or part of its contents or of another fact establishes a presumption under this Chapter." A presumption is defined by La. C.E. art. 302 as "an inference created by legislation that the trier of fact must draw if it finds the existence of the predicate fact unless the trier of fact is persuaded by evidence of the nonexistence of the fact to be inferred." And to be clear, "[p]resumptions regulated by this Chapter are rebuttable presumptions and therefore may be controverted or overcome by appropriate evidence." La. C.E. art. 304. Here, IPF22 argues that because Ms. Sholes failed to file an opposition to its motion for summary judgment, the presumption created by the filing of the tax sale certificate into the record cannot be rebutted. We find this reasoning to be erroneous.

This issue came before us recently in *Bankers Ins. Co. v. EMIII Holdings, LLC*. In that case, we recognized that "[t]he failure to file an opposition does not automatically require that the motion for summary judgment be granted, as the initial burden of proof is on the mover." 24-0386, p. 23 (La. App. 4 Cir. 12/16/24), ___ So.3d ___, ___, 2024 WL 5116650, at *11 (quoting *Auricchio v. Harriston*, 20-01167, p. 5 (La. 10/10/21), 332 So.3d 660, 663, n.2). *See also* La. C.C.P. art. 966(A)(3). Accordingly, the issues before us are whether the record as a whole is sufficient to rebut the *prima facie* presumption created by the tax sale certificate,

16

and whether there are genuine issues of material fact remaining as to whether an effort meeting the requirements of due process of law has been made to identify the proper parties and to provide them with notice.[10]

In the matter now before us, pursuant to our *de novo* review, several discrepancies appear. First, the tax sale certificate is facially non-compliant with the form requirements set forth in La. R.S. 47:2155. Specifically, that portion of the statute that requires the tax collector to provide the time of the sale.[11] Next, in the Petition, IPF22 states that at the time of the tax sale, the sole owner of record of the Property was Diane Sholes and that Arianne Sholes had no recorded interest in the Property until November 24, 2021. This interest came into existence by virtue of a judgment of possession, which was signed on February 4, 2020.[12] Nevertheless, IPF22 contends that on October 16, 2016, the tax collector sent notice by certified mail to *Arianne* Sholes at the Property's municipal address, and received the certified mail receipt (also known as a "green card") showing that it was signed for by *Ranee* Sholes. IPF22 claims that by virtue of this mailing and the receipt of the green card, the tax collector had no reason to believe that notice had not actually been received by Arianne Sholes. The green card does not appear

---

[10] Louisiana Code of Civil Procedure Article 966(A)(4)(a) sets forth, in part, that "[t]he only documents that may be filed or referenced in support of or in opposition to the motion are pleadings . . . ." While IPF22 did not attach a copy of the Petition to its motion for summary judgment, in its memorandum in support of the motion, it specifically requested that the district court admit and consider the entire record (see *Motion for Summary Judgment and Supporting Memorandum*, n.3). Therefore, we include this pleading as part of our *de novo* review.

[11] The form provided in La. R.S. 47:2155 provides, in pertinent part:

> BE IT KNOWN AND REMEMBERED, that, I, [Name of tax collector] . . . did in the manner prescribed by law, advertise and list in [name of appropriate journal for legal notices] the property to be sold for delinquent property taxes with interest and costs for the year(s) of _____ in the [place of sale] on [dates of publication], beginning at ten o'clock A.M. . . . .

[12] The record reflects that Ms. Sholes filed an affidavit of death, domicile, and heirship with the district court on May 16, 2019.

in the record. Moreover, in its memorandum in support of its motion for summary judgment, IPF22 states that until the judgment of possession was recorded, there were no documents contained in the Orleans Parish land records indicating that Diane Sholes was deceased or that contained the identities and whereabouts of her heirs. Yet, IPF22 sought to partially cancel the *Road Home Declaration of Covenants Running with the Land, Hurricane Katrina/Hurricane Rita*, which it declares was recorded on July 29, 2011, at NA 27248 and CIN 494213 and was executed by Arianne Sholes as agent-in-fact for her five siblings. In its Petition IPF22 further avows that at least six months prior to the end of the redemption period, notices were mailed to Diane Sholes, the estate of Diane Sholes and to each of her six children.[13]

Based upon our *de novo* review, we find the lack of formalities in the tax sale certificate and the factual inconsistencies contained within the record are sufficient to rebut the presumption created by the tax sale certificate that the tax collector had strictly complied with each and every requirement of the laws relating to delinquent taxes and tax debtors.[14] Having held that Ms. Sholes' reconventional demand was timely filed and that the district court failed to address or rule on this question, genuine issues remain as to whether due process has been satisfied in this case. This is of paramount concern. Therefore, we conclude that the district court erred when it granted IPF22's motion for summary judgment.

---

[13] Pursuant to La. C.C. art. 1853 "[a] judicial confession is a declaration made by a party in a judicial proceeding. That confession constitutes full proof against the party who made it. A judicial confession is indivisible and it may be revoked only on the ground of error of fact." Furthermore, "[a]n admission by a party in a pleading constitutes a judicial confession and is full proof against the party making it." *1026 Conti Holding v. 1025 Bienville, LLC*, 22-01288, p. 14 (La. 3/17/23), 359 So.3d 930, 941(first citing La. C.C. art. 1853; and then citing *C.T. Traina, Inc. v. Sunshine Plaza, Inc.*, 03-1003, p. 5 (La. 12/3/03), 861 So.2d 156, 159).

[14] As noted in La. R.S. 47:2155 2008 comment (c), problems with a tax sale itself and a tax sale certificate do not create a nullity action.

Because we find the granting of summary judgment to be in error in this case, we pretermit any discussion of the motion for new trial as moot.

## DECREE

For the foregoing reasons, we reverse the district court's January 4, 2024 judgment and remand for further proceedings consistent with this opinion.

**REVERSED AND REMANDED**